57 CCPA

The **UNITED STATES**, Appellant,

v.

**PAN AMERICAN IMPORT CORP., M. H. Garvey Co.,** Appellees.

The **UNITED STATES**, Appellant,

v.

**HUB FLORAL MANUFACTURING COMPANY,** Appellee.

**Customs Appeal Nos. 5338, 5352.**

United States Court of Customs and Patent Appeals.

July 23, 1970.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Herbert T. Posner and Glenn E. Harris, New York City, for the United States.

Walter E. Doherty, Jr., Boston, Mass., attorney of record, for appellees.

Before RICH, BALDWIN and LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

RICH, Judge.

This opinion explains our decisions in two appeals which were briefed separately and argued separately but by the same counsel on the same day.

The first appeal (No. 5338, United States v. Pan American Import Corp., et al.) is from the decision and judgment of the United States Customs Court, Third Division, Appellate Term, 61 Cust. Ct. 619, 292 F.Supp. 718, A.R.D. 248 (1968), reversing the decision and judgment of a single judge sitting in reappraisement, 58 Cust.Ct. 608, R.D. 11269 (1967).

The second appeal (No. 5352, United States v. Hub Floral Manufacturing Co.) is from the decision and judgment of the United States Customs Court, Second Division, Appellate Term, 62 Cust.Ct., 296 F.Supp. 355, A.R.D. 249 (1969) reversing in part the decision and judgment of a single judge sitting in reappraisement, 59 Cust.Ct. 627, R.D. 11349 (1967).

The merchandise involved in both appeals was imported from Japan—that in No. 5338 consisting of fishing reels and in No. 5352 a variety of items including Christmas ornaments, artificial flowers and birds, baskets, mosaic tiles, and dolls.

The parties in both appeals agree that the correct basis of valuation is "export value" as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,

**850**

T.D. 54165, which reads in pertinent part:

(b) *Export Value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is *freely sold or, in the absence of sales, offered for sale* [1] in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. [Emphasis added.]

Each appeal involves a "separable appraisement" and application of the so-called "separability rule," both of which were succinctly explained in United States v. Supreme Merchandise Co., 48 Cust.Ct. 714, A.R.D. 145 (1962):

If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. United States v. Dan Brechner et al., 38 Cust.Ct. 719, A.R.D. 71; United States v. Gitkin Co., supra; Valley Knitting Co., Inc., et al. v. United States, 44 Cust.Ct. 599, Reap.Dec. 9627. Under the rule expressed in United States v. Fritzsche Bros., Inc., 35 C.C.P.A. (Customs) 60, C.A.D. 371, a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. United States v. Dan Brechner et al., *supra.*

*No. 5338*

In this appeal, the appraisement was arrived at by the appraiser by adding 1.9 percent packing and inland charges (inland freight, insurance, hauling, lighterage, and storage) to the invoice unit price. Appellee, the importer, claims that the invoice unit price represents the ex-factory price, that the merchandise is "freely sold" (section 402(b), supra) at ex-factory prices, and that the additional charges (packing and inland charges) are therefore non-dutiable. In support of this claim, appellee has submitted two affidavits which, together with attachments, constitute exhibits 1 and 2, the only evidence in the case. These affidavits were summarized by the trial judge as follows:

Plaintiffs' exhibit 1 was signed by Torayuki Fukunaga and states that it was to certify that Arrow International, Ltd., of Kobe, Japan, a trading company, purchased from Tsuda Clock Mfg. Co., Ltd., of Nagoya, Japan, for the account of Pan American Import Corp., the merchandise listed on the schedule attached. It is further stated that Arrow purchased said merchandise from the manufacturer at the ex-factory prices, net packed, shown on the invoices herein, and that the inland freight, insurance, hauling,

---

1. Section 402(f) provides:
 For the purposes of this section—
 (1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—
 (A) *to all purchasers* at wholesale, or
 (B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise, * * *. [Emphasis added.]

lighterage, storage, and other petty charges were paid by Arrow, for the account of Pan American and not to the manufacturer. The schedule attached is a statement by Tsuda Clock Mfg. Co., Ltd., listing shipments made by Arrow of Tsuda's No. B-268 spinning reels and stating that the ex-factory prices included packaging charges.

Plaintiff's [sic] exhibit 2 is an affidavit executed by H. Tsuda, president of K. K. Tsuda Tokei Seizoho (apparently the same concern as Tsuda Clock Mfg. Co., Ltd.). It states:

> During the period of September, 1962 through March, 1963 my company sold and delivered to Arrow International Ltd., of Kobe, Japan, certain fishing reels in accordance with the confirmation of order, a copy of which is annexed hereto, marked "A", and in accordance with the statement annexed hereto, marked "B". The unit price was ¥ 313.-20 each, as per said confirmation, which price was the ex-factory price for said merchandise, and included all packing charges at our factory. During this same period of time we offered similar merchandise for sale to all persons who wished to buy the same at the same prices.

> Our factory, at Nagoya, Japan, is a principal market in Japan for the sale of such merchandise for exportation to the United States. During this period we never sold such or similar merchandise on an F.O.B. port of shipment, Japan, basis. No inland freight charges, insurance premiums, hauling and lighterage charges, and storage or other charges were charged by us in addition to the above.

The trial judge went on to discuss the separability rule and then stated:

> Nevertheless, the burden still rests upon plaintiffs to establish that the merchandise is freely sold to all purchasers at prices which do not include the disputed charges [citations omitted]. The issue here is whether plaintiffs have met this burden.

The existence or nonexistence of *this* burden of proof is the issue before us. Having so framed the issue, the trial judge considered appellees' affidavits in detail and then gave the following as one of his findings of fact:

> 5. That the record does *not* establish that, on or about the dates of exportation, such or similar merchandise was freely sold or offered for sale in the principal markets of Japan to *all* purchasers in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States *at ex-factory prices*, not including inland charges and packing. [Emphasis added.]

The Appellate Term reversed, stating:

> As our court of appeals said in *Bud Berman* [2] * * * the separability rule is a "framework of convenience for the analysis of disputed appraisements". The decision below, which we here review, held however that, under the separability rule plaintiff still had to establish that the merchandise was freely sold to all purchasers at ex-factory prices which did not include the disputed charges. In the light of United States v. Chadwick-Miller [3] * * * we must conclude it was error to so hold. For there the court of appeals squarely held that "[a]lthough there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by them [plaintiffs], there need not have been such evidence, in view of the separability rule." United States v. Chadwick-Miller * * *.

> * * * * * *

> The decision below was to the effect that Tsuda's affidavit did not establish that the reels were freely sold or offered for sale to all purchasers at

2. United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967).

3. United States v. Chadwick-Miller Importers, Inc., 54 CCPA 93, C.A.D. 914 (1967).

the ex-factory prices. However, the appraisements in these appeals at ex-factory unit invoice prices, plus charges, are separable, and under the separability rule, as we read United States v. Chadwick-Miller, there was no need to prove the correctness of the constituent section 402(b) statutory elements of the uncontroverted appraised ex-factory invoice unit price. An appraised ex-factory invoice unit price is presumptively correct as to *all statutory elements of that part of the appraised value* under section 402(b), and not merely as to some of the statutory elements. Where appraised values are separable into identifiable parts, each part, as we have discussed the separability rule, presumptively carries in it all the statutory elements of the particular basis of valuation, 28 U.S.C., section 2633.

In our opinion, the Appellate Term has not read *Chadwick-Miller* and *Bud Berman* correctly. In the former, this court held, in essence, that, where a separable appraisement is involved, once an importer has shown that the merchandise was freely sold or offered for sale to *all* purchasers, in the principal markets, in the usual wholesale quantities, on an *ex-factory* basis, then the separability rule will give rise to a presumption that the ex-factory *price* which the appraiser found was *the* price at which the merchandise was freely sold or offered to all.

The Appellate Term appears to have overlooked an important fact finding which underlays the decision in *Chadwick-Miller*. In that case the trial judge found:

> On or about the dates of exportation of the involved merchandise, such or similar merchandise was freely sold or offered for sale *to all purchasers* in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the invoice unit ex-factory prices, net, packed. [Emphasis added.]

The Appellate Term had accepted that finding. The question before us, which we held to be settled by application of the separability rule presumption, related only to the *price* at which the goods were sold or offered ex-factory. As we stated in the opinion:

> Although there is no evidence to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by them, there need not have been such evidence, in view of the separability rule. United States v. Fritzsche Bros., Inc., 35 CCPA 60, C.A.D. 371.

Similarly, in *Bud Berman*, which followed *Chadwick-Miller*, we said:

> We do not think that the Customs Court necessarily acted improperly in its derivation here of the subsidiary presumption that the ex-factory *price* used by the appraiser is the one offered to all, *if, in fact, an ex-factory price is offered to all.* [Emphasis added except for "an".]

Thus, as stated in the Government's brief herein (substantially the same statement appearing in the brief in No. 5352):

> * * * the doctrine of severability has no relation to the first "hurdle" that the importer must clear, i. e., to establish that such or similar merchandise was in fact offered to all purchasers on an ex-factory basis. Once this "hurdle" has been passed, the severability rule makes it unnecessary for the importer to go further and show what the actual ex-factory prices so offered were, as the ex-factory price he has paid then (and only then) is conclusively presumed to meet the requirements of export value.

Appellant argues that appellees have failed to clear this first hurdle.

 Inasmuch as under *Chadwick-Miller* and *Bud Berman* appellees must show that the involved merchandise was *freely sold or offered* to *all* purchasers on an ex-factory basis, and inasmuch as

the Appellate Term held that appellees need show no more that that the merchandise was sold *to appellees* on an ex-factory basis, the Appellate Term did not consider the appellees' evidence in light of the applicable burden of proof. Accordingly, the decision and judgment of the Appellate Term are *reversed* and this case is hereby *remanded* for further consideration consistent with this opinion.

### No. 5352

■■ Although appellant (the United States) contends to the contrary, we feel that the Appellate Term in this appeal understood and properly stated the burden of proof that appellee was bound to meet in order to bring the separability rule into effect and thereby to prevail. Thus, the opinion states:

It may now be considered settled law that the presumption of correctness of the unchallenged portion of an appraisement at ex-factory plus inland charges values extends to and *preserves the per se ex-factory prices*, and limits the essential elements of proof to the effect and/or amount of the disputed charges. It it be contended that the disputed charges formed no part of the value of the imported merchandise because they were incurred subsequent to the time when it was packed, ready for shipment to the United States, in the principal market of the country of exportation, all that need be proven is that such or similar merchandise *was freely sold or offered for sale upon an ex-factory basis*. [Emphasis added.]

The evidence of record was summarized by the court as follows:

Here, as in *Brechner*,[4] a climate has been established of sales to appellant by many different manufacturers of a variety of merchandise at ex-factory prices. Here, as in *Chadwick-Miller*, the buying agents have affirmed that they act as such for other American purchasers "purchasing merchandise for them from the same and other factories in Japan on ex-factory basis" * * * Clearly ex-factory sales to appellant were in the ordinary course of trade, for this is the only way appellant's purchases were made. It is a reasonable inference from the instant record that appellant was not the only purchaser able to buy at ex-factory prices, or that any special arrangements were made to accommodate it. As appellant's representative went from manufacturer to manufacturer of the sundry articles he desired he was able to negotiate ex-factory prices with all. And while it is true that the affidavits of the several agents did not mention by name any individual manufacturers or any specific items of merchandise they all indicated that ex-factory purchases were made from the same manufacturers.

We are of the opinion that the record in this case suffices to establish that ex-factory sales exclusive of the disputed charges were made in ordinary course of trade, and that therefore the charges in question are not part of the values of the articles here involved.

■ Appellant argues that there "is no substantial evidence to support a finding of sales or offers on an ex-factory basis." Our review of the evidence leads us to the contrary conclusion and, accordingly, we affirm the decision and judgment of the Appellate Term.

### SUMMARY

Appeal No. 5338 is reversed and remanded. Appeal No. 5352 is affirmed.

4. United States v. Dan Brechner & Co., 38 Cust.Ct. 719, A.R.D. 71.