56 CCPA

**Application of Dwin R. CRAIG and John N. Street.**

**Patent Appeal No. 8142.**

United States Court of Customs and Patent Appeals.

June 26, 1969.

Moore & Hall, Elliott I. Pollock, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–20 of application serial No. 392,379, filed August 27, 1964, for "Photographic Method and Apparatus," on the sole ground of *res judicata*.[1] No claim has been allowed.

The application on appeal was stated in the specification as filed to be "a continuation of copending application serial No. 753,942, filed August 8, 1958."[2] That parent application was rejected on certain prior art and for inadequacy of disclosure. An appeal was taken to the Board of Appeals[3] which affirmed both grounds of rejection by a decision dated June 30, 1964. The present application was filed before the termination of proceedings on the first application since it was filed before the time to appeal had expired. In the refiled application now before us, the specification was modified by setting forth quotations from published articles which had been incorporated in the first application only by reference. The claims were substantially changed by the insertion of limitations which had not appeared in the claims of the first application, although in some respects the new claims were broader. The new application contains an affidavit of Dr. George H. Dorion on the issue of insufficient disclosure in which he states that the disclosure in both of appellants' applications was adequate to enable him to practice the invention. By reason of one or more of these three changes—in the specification, in the claims, and in the evidence of record—appellants contend that the *res judicata* rejection was not proper.

The decision of the board here on appeal is dated November 30, 1966, which was before we handed down our opinions on the subject of res judicata in In re Herr, 54 CCPA 1315, 377 F.2d 610 (May 11, 1967), and In re Kaghan, 55 CCPA 844, 387 F.2d 398 (Dec. 14, 1967, rehearing denied Feb. 15, 1968). The board, therefore, was unaware of our views on the law as therein set forth. Notwithstanding consideration of the *Herr* case by the Patent Office Solicitor in his brief, filed Feb. 13, 1968, he relies in that brief on In re Prutton, 40 CCPA 975, 204 F.2d 291, (1953). The solicitor says, in fact, "the decision in Prutton is controlling." In *Herr*, the opinion of the Chief Judge did not discuss *Prutton* though it refers to it in a footnote in quoting from the board. In the concurring opinion of the writer, however, *Prutton* was considered *in extenso* and it was stated as his view that the court reached the wrong conclusion in that case, that it should be overruled (54 CCPA at 1321, 377 F.2d 610), and that he would overrule it and considered that by implication the Chief Judge's opinion did so (CCPA at 1326, 377 F.2d 610). The late Judge Smith, in his concurring opinion in *Herr*, said (CCPA at 1335, 377 F.2d at 625):

> * * * as Judge Rich has pointed out in his concurring opinion, *Prutton* is of questionable value as a precedent

1. The examiner made several other rejections all of which were reversed by the board, leaving only the *res judicata* rejection to be appealed to this court.

2. Uncertainty crept in when appellants amended on May 14, 1965, to add—or a continuation-in-part—to this statement. The board ruled that the application is actually a "continuation" and appellant's brief here admits that it is. In other words, no new matter has been added to the disclosure. This is unimportant in this case except as it has a tangential bearing on the discussion of adequacy of disclosure.

3. Consisting of Examiners-in-Chief Federico and Rosa and Acting Examiner-in-Chief Stone.

and I agree with him that it should be overruled. It seems to me also that the practical effect of the majority opinion here is to do so.

To put an end to reliance on *Prutton*, it is hereby expressly overruled. The reasons will be found fully set forth in the writer's opinion in *Herr*. The *Herr* and *Kaghan* decisions are controlling here, not *Prutton*.

The situation in this case bears a close factual resemblance to that in *Herr*. The board here,[4] after reversing all of the examiner's rejections except res judicata, said:

> The instant *res judicata* rejection appears to be based on the affirmance of the prior case [by the board] on inadequate disclosure and the art rejection.

We have already pointed out that the board reversed, in this case, all rejections based on art. The next thing it did was to hold expressly that the original rejection on the ground of inadequate disclosure was in error, saying by way of explanation:

> We independently passed upon this question solely because, if on review the *res judicata* rejection should be considered to be an error on some basis that we cannot see, our independent views on the subject of adequacy of disclosure would be present in the record.

Then, considering the *res judicata* based on the art rejection and its affirmance in the prior application, the board said (our emphasis):

> We independently passed upon the art rejection as made in the instant case and show that *we are of the opinion that the subject matter is patentable over the art used.* We did this so that our differing viewpoint would be clearly of record if, on review, the *res judicata* rejection should be found to be in error for some reason that we have been unable to ascertain.

Thus, the board held herein that both of the prior rejections, by another panel of the board, underlying the *res judicata* rejection herein—inadequate disclosure and unpatentability over prior art—were *wrong*. It then proceeded, nevertheless, to sustain the *res judicata* rejection. After an analysis of the claims, the board stated:

> Thus the claims before us introduce no question of patentability other than those passed upon in the parent case. Under such circumstances, a holding of *res judicata* is proper. Therefore, this rejection is sustained.
>
> The rejection of the claims as based on inadequate disclosure is reversed. The rejection of the claims on the ground of *res judicata* as to both the art rejection and the rejection on the basis of inadequate disclosure is affirmed. Each art rejection is reversed.

In summary, though the board found the claims to define patentable subject matter and to be proper claims and found the prior board decision on the inadequacy of the disclosure to have been wrong, it felt obliged to refuse them on the legal theory of *res judicata*. The board thus found itself bound by its own previous errors. We reverse. We consider this to be an improper application of the doctrine.

When the Patent Office, through its duly constituted tribunal, has determined that claims are patentable to an applicant under the statute, allowance of those claims should not be refused merely because on a previous occasion the same or similar claims have been refused on grounds no longer deemed to be valid.

While *res judicata* has its proper place in the law as a reflection of a policy invoked to settle disputes and put an end to litigation, the prosecution of patent applications is not exactly either a dispute

4. Consisting of Examiners-in-Chief Bailey and Brewrink and Acting Examiner-in-Chief Bendett.

or litigation in the usual sense of these terms. There are additional public policy considerations which have a bearing here, namely, furtherance of the policy inherent in the patent laws to grant patents when the Patent Office finds that *patentable* inventions have been disclosed and properly claimed so that such inventions are made public through the grant. The granting of such patents is also in the public interest in that it may stimulate the commercialization of the patented inventions, thus bringing them into actual use for the benefit of the public. Society stands to lose—if there is any validity at all to the theories underlying the patent system—when a patent is refused on an invention which is patentable under the statute. It has been held by the board that such an invention is here being claimed. As was said in the opinion of the Chief Judge in *Herr:*

> The Patent Office * * * should be * * * alert in protecting the rights of applicants who have legally and properly established such a right. To do otherwise would be to unjustly enrich the public at the expense of the inventor, a result we feel confident Congress could not have intended.

When the Patent Office, through the decision of a duly constituted panel of its Board of Appeals, has itself conceded error in a prior decision against patentability and has expressly found claims to be allowable under the statute as proper in form, supported by the specification, and directed to patentable subject matter, we see no reason to seek any further for a technical reason for saying that the doctrine of *res judicata* should not be applied. That doctrine is based on considerations of public policy and it seems to us that broad countervailing policy considerations preclude its application in this case, as they did in *Herr.*

Nevertheless, though we do not rely on it, there exists sufficient technical ground for not applying *res judicata* in that the claims here on appeal are substantially different from the claims in the parent application with respect to the subject matter covered. Since we do not rely on this reason, we find it unnecessary to discuss the differences, as we have found it unnecessary to discuss the details of the invention.

In *Kaghan* we held that by setting up and publishing in the Rules and the Manual of Patent Examining Procedure the practice which was followed by appellants in that case, which is the same as the practice followed by appellants in this case, the Patent Office was estopped to reject solely on the theory of *res judicata.* The following passage, with added emphasis, states the gist of the holding:

> We interpret these passages [MPEP 706.03(w), 201.07, 35 U.S.C. 120, and Rule 197(c)] as establishing the right of an applicant to file a continuation application following an adverse Board of Appeals decision *within the time allowed for further appeal,* and as establishing his *right to have that application examined.* A holding of *res judicata* without reliance on any other ground of rejection *is not an examination on the merits* of the application and *so may not be used* in such a situation.

The solicitor's brief in arguing about the applicability of *Kaghan* seems completely to miss the point of the decision and the import of what we said. Once again, similarly to what the solicitor had to say in his brief in *Herr* (see footnote 3 of the writer's concurring opinion), a point is made of the "paramount interest" of the public as a "silent party to every proceeding in which a patent has been refused by the Patent Office." Indeed, we agree that it is, but not, as urged, on the side of the Patent Office right "to reject on the ground of *res judicata.*" Rather, the paramount interest of the public is to have patents issued when it has been demonstrated to the satisfaction of the Patent Office that patentable inventions are claimed, notwithstanding the doctrine of res judicata, the proper

application of which lies in entirely different situations.

The decision of the board is reversed.

Reversed.

WORLEY, C. J., and ALMOND, J., concur in the result.