**Application of Walter L. BORKOWSKI and John J. vanVenrooy.**

**Patent Appeal No. 74–564.**

United States Court of Customs and Patent Appeals.

Nov. 27, 1974.

Rehearing Denied Jan. 23, 1975.

Barry A. Bisson, Wilmington, Del., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection under 35 U.S.C. § 103 of claims 1–14 and 24–32 in appellants' application serial No. 621,379, filed January 23, 1967,[1] entitled "Chlorination of Hydrocarbons." A Rule 131 affidavit submitted to antedate the sole prior art patent on which the rejection was based was held inadequate. We affirm.

### The Invention

Claim 1 illustrates appellants' invention:

1. Method of chlorinating a hydrocarbon which comprises

(a) feeding hydrocarbon in vapor phase at an intermediate level into a reactor maintained at a temperature in the range of 315–500°C., said hydrocarbon and its chlorination reaction products being a vapor at the selected reaction temperature and said reactor containing a bed of ferrous chloride extending from the bottom thereof to near the level of hydrocarbon introduction and having a reaction space above the bed,

(b) flowing the hydrocarbon vapor upwardly in said reaction space,

(c) feeding hydrogen chloride and oxygen into the bottom of said bed in an $HCl:O_2$ molar proportion of at least 4:1 and flowing the same upwardly in contact with the ferrous chloride, whereby ferrous chloride is continuously converted to gaseous ferric chloride,

(d) flowing the gaseous ferric chloride upwardly in said reaction space in contact with the hydrocarbon, whereby chlorination of the hydrocarbon occurs with the formation of by-product hydrogen chloride and the ferric chloride is reduced to sol-

---

1. Appellants have been afforded the benefit of the filing date of applications serial No. 144,202, serial No. 144,219 and serial No. 144,221, all of which were filed on October 10, 1961.

id ferrous chloride which falls downwardly to said bed, and

(e) withdrawing chlorinated hydrocarbon and by-product hydrogen chloride from the upper part of said reactor.

No separate arguments having been presented in appellants' brief with respect to claims 2–14 and 24–32, those claims stand or fall with claim 1.

### The Issues

Appellants assert that the board erred in: (1) failing to find, from the record as a whole, that the relevant disclosure in the Borkowski, Oberdorfer, and Seitzer patent (Borkowski et al.)[2] is not prior art because it is not the invention of "another"; (2) refusing to consider their supplemental affidavit submitted in response to the board's additional criticism of the Rule 131 affidavit and, hence, denying appellants due process; (3) finding the claims obvious under 35 U.S.C. § 103 over Borkowski et al.; and (4) rejecting the Rule 131 and supplemental affidavits as insufficient to remove Borkowski et al. as prior art. We deal with the issues in the order listed.

### Appellants' Arguments

Regarding issue (1) appellants point to affidavits by Seitzer and Oberdorfer, stating that they made no contribution to the claimed invention, as a basis for an inference that the relevant disclosure in Borkowski et al. was derived from Borkowski. The joint oath by appellants in the present application is relied upon as additional support for an inference that the relevant disclosure in Borkowski et al. was derived from appellants.

In arguing lack of due process in their presentation of issue (2), appellants agree that the board had the right under its examining function to make new findings in the form of its additional criticisms of the Rule 131 affidavit.

However, appellants contend that under such circumstances 35 U.S.C. § 132 required that the board provide applicants an opportunity to respond to the additional criticisms.

Respecting issue (3), appellants rely on a prior board decision[3] involving an application which is a parent to the present application. In that decision the board reversed a § 103 rejection based on Borkowski et al. Appellants insist that the prior board decision is "res judicata" and thus binding upon the examiner in this case. If not res judicata, say appellants, that prior decision should at least tip the scales in favor of non-obviousness here. Appellants further argue that the present claims set forth inventions which would not have been obvious over Borkowski et al.

Appellants stress, with respect to issue (4), that the board used improper standards from interference case law to test the sufficiency of the affidavits. Citing In re Moore, 444 F.2d 572, 58 CCPA 1340 (1971), as setting forth the proper standard, appellants assert the affidavits are sufficient. Appellants further assert that one of ordinary skill in the art, upon reading the reference in an invention disclosure, affidavit Exhibit 1, to laboratory notebook pages (Exhibit 2), "would have no doubt that they had actually reduced to practice" their invention. Lastly, appellants argue that the board failed to give any weight to the "sworn testimony" in the Rule 131 affidavit as to the interpretation of the attached exhibits.

### The Prior Art

Borkowski et al. disclose a process for chlorination of methane by contacting it with ferric chloride ($FeCl_3$) vapor in one reaction zone at a temperature in the range of 220°–800°C. That process of ferrichlorination of methane is admitted as having been described and claimed in an abandoned application of

---

2. Patent No. 3,172,915 issued March 9, 1965, filed April 13, 1961.

3. Appeal No. 632–30, dated November 23, 1966, in application serial No. 144,202.

Blair.[4] Borkowski et al. additionally disclose that solid ferrous chloride (FeCl$_2$) settles out from the reaction products and a portion thereof is removed to another reaction zone. The ferrous chloride is there regenerated into ferric chloride, for recycling to the first reaction zone, by contacting it with HCl and oxygen.

### The Rule 131 Affidavit

A principal issue is whether the Rule 131 affidavit overcomes Borkowski et al. as prior art. Appellants there assert that they invented the subject matter of the present application and that they conceived and reduced to practice the disclosed and claimed subject matter of their application prior to the filing date of Borkowski et al. The remainder of the affidavit states:

THAT attached hereto are copies of the following papers which they prepared: (1) an invention disclosure labeled "Exhibit 1"; (2) copies of laboratory notebook pages marked "Exhibit 2"; (3) copies of calculation sheets referring to the data shown in Exhibit 2 and labeled "Exhibit 3," all of which describe a reduction to practice of the process of this application.

THAT Exhibit 2 shows: (1) the temperature profiles of a reactor used in the process of this invention, (2) at page 322141, a bed of ferrous chloride extending from the bottom of the reactor to an intermediate level, (3) the feeding of methane into the reactor at a level above the bed and at a temperature above its boiling point, (4) the methane vapor flowing upward, (5) feeding hydrogen chloride and oxygen into the bottom of the bed in a proportion of HCl:O$_2$ of at least 4:1, (6) the HCl and O$_2$ contacting the bed of ferrous chloride.

THAT Exhibit 2 further shows the running times of the reaction of the invention, the flows of starting materials and vapor phase chromatography, (VPC), runs on the products of the reaction at particular times.

THAT Exhibit 3 shows analyses of some of the vapor phase chromatography runs corresponding to the VPC numbers shown in Exhibit 2 and that these analyses indicate chlorinated hydrocarbon in the product stream and further shows an iron balance on pages 315009, 315012 and 315013 which shows that FeCl$_2$ was converted to FeCl$_3$ which then chlorinated methane with conversion back to FeCl$_2$.

THAT the dates which have been removed from Exhibit 1, Exhibit 2 and Exhibit 3 are prior to the April 13, 1961 filing date of Patent 3,172,915.

Exhibit 1, the invention disclosure, refers under the heading "Reduction to Practice" to certain notebook pages which coincide with pages in Exhibit 2.

Exhibits 2 (seven pages) and 3 (eight pages) appear to be records of laboratory data.

### Criticism of the Rule 131 Affidavit

The examiner's criticisms of the affidavit were: (1) there is no showing of how formation of Fe$_2$O$_3$ from the reaction of O$_2$ and HCl with FeCl$_2$ is suppressed or how it is removed except in Exhibit 1 which refers to test run #500; (2) test run #500 with only an O$_2$ feed (no HCl feed) is not within the claims; (3) Exhibit 1 describes a proposal and not a reduction to practice; (4) the affidavit "does not allege that the reduction to practice shown in Exhibits 2 and 3 were [sic] carried out by applicants or on their behalf"; and (5) only some of the notebook pages of Exhibits 2 and 3 are signed by van-Venrooy, and none is signed by Borkowski.

The board additionally commented that: (1) the exhibits consist in most part of unexplained data; (2) the analysis by vapor phase chromatography (VPC) of two out of approximately 40

---

4. Serial No. 60,423, filed October 4, 1960.
4. Serial No. 60,423, filed October 4, 1960.

periodic samples of the reaction products taken during the test runs is not sufficient to establish any results relative to the remaining samples, and the significance of the two samples has not been explained; and (3) there is no evidence of any conviction of success or appreciation of the reduction to practice.

In response to the above criticisms by the board, appellants submitted a supplemental affidavit with their petition for reconsideration. The board regarded that affidavit as not entitled to consideration, but it did hold that "the proofs submitted under the provisions of Rule 131, when considered as a whole," were not convincing. In the supplemental affidavit, appellants stated in pertinent part:

(5) Additionally, they now present the attached Exhibit 4 to supplement their original exhibits. The said Exhibit 4 is a copy, with dates removed, of a routine progress report, made by the said John J. vanVenrooy to his supervisor, Dr. Paul E. Oberdorfer, Jr., in which the significance of runs 500 and 501 was reported. Note at page 1 of the exhibit that in run 500, made without HCl addition, the bed of $FeCl_2$ had been converted to $Fe_2O_3$ in *160 minutes*, whereas after *600 minutes* of running time in run 501 (where HCL and $O_2$ were introduced into the $FeCl_2$ section of the reactor) the bed still contained $FeCl_2$ (although the major part was $Fe_2O_3$). Accordingly, although iron oxide formation had occurred, the report shows that applicants appreciated that the desired process (of the present Claim 1) had in fact been reduced to practice.

(6) Also note in Exhibit 4 (at page 2, second paragraph) that the invention of Claim 1 was also reduced to practice in run No. 502, which was made prior to April 13, 1961. As reported in Exhibit 4, in run No. 502

(which ran for 980 minutes) the shrinkage of the $FeCl_2$ bed due to $Fe_2O_3$ formation only became apparent *after several hours of operation* during which chlorination of the methane feed was observed.

The content of Exhibit 4, entitled "Monthly Progress Report," is exemplified in the body of the supplemental affidavit.

### OPINION

#### (1) *The Prior Art Issue*

■ The record manifestly contains nothing to rebut the prima facie availability of Borkowski et al. as evidence of an invention of *another* described in a prior patent (35 U.S.C. § 102(e)). The affidavits of Oberdorfer and Seitzer stating that they made no contribution to the claimed invention plainly do not raise an inference that the relevant disclosure in Borkowski et al. was derived from appellants. Further, appellants have submitted nothing establishing that the relevant disclosure of Borkowski et al. is their invention. See In re Facius, 408 F.2d 1396, 56 CCPA 1348 (1969). The record here is not inconsistent with the possibility, if not probability, that the relevant disclosure of Borkowski et al. is at least in part the contribution of Blair. Accordingly, appellants have not met the burden of proving facts sufficient to overcome the prima facie available reference. In re Facius, supra.

#### (2) *The Due Process Issue*

■ Although the board opinion includes an indication that appellants' supplemental affidavit and exhibits would *not be considered*, a reading of the entire opinion of the board on reconsideration convinces us that it did in fact consider that evidence in reaching its final decision. There is, therefore, no proper basis for appellants' complaint with respect to due process.[5]

---

5. The board also noted that the brief on the request for reconsideration contains no specific explanation of why the additional proofs overcome the defects set forth in the original decision.

### (3) *The Obviousness Issue*

#### (a) *"Res Judicata"*

■■ Appellants' contention that the prior board decision reversing a rejection under 35 U.S.C. § 103 over Borkowski et al. in a parent application should have been "res judicata" to the examiner in this case is unpersuasive. This court stated in In re Craig, 411 F. 2d 1333, 56 C.C.P.A. 1438 (1969), that the policy and purpose of the patent laws preclude the applicability of any doctrine akin to the judicially-developed doctrine of "res judicata" to bar the granting of patents on inventions that comply with the statute. The same policy and purpose precludes reliance on any such doctrine to force the granting of patents on inventions that do not comply with the statute. The Patent Office must have the flexibility to reconsider and correct prior decisions that it may find to have been in error. As this court stated in In re Schmidt, 377 F.2d 639, 54 C.C.P.A. 1577 (1967), in sustaining the board's right to grant an examiner's request for reconsideration and thereafter to reverse its decision favorable to an applicant:

It is the duty of the Patent Office to satisfy itself in the first instance that the statutory requirements pertaining to the obtaining of patents have been met. We are aware of no authority, and appellants cite none, which precludes the Patent Office from retaining jurisdiction in the prosecution of applications and correcting what it considers to be mistakes in its decisions, until the time for judicial review has expired or a patent has issued. Compare In re Citron, 326 F.2d 418, 51 C.C.P.A. 869 [(1964)]. Quite evidently the board simply overlooked and misapprehended the examiner's reasons in its first decision, and was convinced of its error upon review. Under the circumstances we see no abuse of discretion upon the part of the board in acting as it did here.

#### (b) *Obviousness*

■ Considering the entire record before us, we find no reversible error in the present board's decision sustaining the rejection under 35 U.S.C. § 103. The use in Borkowski et al. of two reaction zones which are interconnected by conduits for removal of $FeCl_2$ and the regenerating of a portion of the $FeCl_2$ into $FeCl_3$ for recycling into the first zone to chlorinate the hydrocarbon clearly suggest a process having two contiguous zones. The reactions of appellants and Borkowski et al. are the same, and the record does not indicate any unexpected difference between the results from appellants' contiguous reaction zones (single reactor) and the two interconnected reaction zones of Borkowski et al. The meager comments by the prior board in the decision in the parent case are not persuasive of any reversible error in the decision on appeal here.

### (4) *The Rule 131 and Supplemental Affidavits Issue*

■ We find ourselves in agreement with the board's decision to the extent that it held the proofs submitted under Rule 131 "taken as a whole" to be unconvincing. The original and supplemental affidavits together with the accompanying comments do not adequately explain what facts or data appellants are relying upon to show a completion of their invention prior to April 13, 1961. The affidavits for the most part consist of vague and general statements in the broadest terms as to what the exhibits show along with the assertion that the exhibits describe a reduction to practice. This amounts essentially to mere pleading, unsupported by proof or showing of facts. In re Harry, 333 F.2d 920, 51 CCPA 1541 (1964).

An "Invention Disclosure," similar to Exhibit 1, may constitute evidence of a conviction of success and may be of evidentiary value when combined with other evidence of a reduction to practice. It cannot itself establish a reduction to

practice where, as here, the facts essential to show a reduction to practice are not themselves clearly established on the record.

A review of the fifteen notebook pages of Exhibits 2 and 3 reveals that they are by no means clear on their face. It was appellants' burden to explain the content of these notebook pages as proof of acts amounting to reduction to practice. That was not done. Appellants have not challenged the board's finding that two of the seven notebook pages of Exhibit 2 and four pages of Exhibit 3 are not themselves directed to the invention in issue. The probative value of those pages, if any, therefore, is minimal. Absent a clear explanation of the remaining notebook pages pointing out exactly what facts are established therein and relied on by appellants, the affidavits based thereon are of little assistance in enabling the Patent Office and its reviewing courts to judge whether there was an actual reduction to practice of the invention. See In re Harry, supra.

Appellants argue that the board erroneously applied the strict standards of interference practice. The board's opinions do cite interference cases and stress such elements as "conviction of success" and "possession of the invention as claimed." The board did not have before it our recent decision in In re Spiller, 500 F.2d 1170 (CCPA 1974), wherein we pointed out that a Rule 131 affidavit need not establish prior possession of the invention as claimed, i. e. of the invention as defined by all of the claim limitations. There are, of course, differences between the requirements of interference practice (Rule 201 et seq.) and the ex parte showing of completion of an invention prior to the effective date of a patent or publication (Rule 131). Nonetheless, a review of the board's opinions in their entireties establishes the correctness of the board's basic finding that the affidavits were insufficient to meet the requirements of Rule 131. The affidavits are equally insufficient when considered in the light of our holding in *Spiller*, which nowhere weakens the requirement, under Rule 131, of a factual showing of completion of the invention before the critical date.

For the reasons expressed above, the decision of the board is affirmed.

Affirmed.