**Application of Leonard M. CARREIRA et al.**

**Patent Appeal No. 76–525.**

United States Court of Customs and Patent Appeals.

April 15, 1976.

Gaetano D. Maccarone, Rochester, N. Y., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, LANE and MILLER, Judges, and ALMOND, Senior Judge.

LANE, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Appeals affirming the examiner's rejection of claims 1–10, all of the claims in application serial No. 126,219, filed March 19, 1971, for an "Imaging Process." We affirm.

## Background

The subject matter of the claims is a method of photoelectrophoretic imaging, i. e., a method of preparing a visible image in which electrically photosensitive pigment particles are suspended in a non-conductive liquid carrier. The suspension is exposed to an image and, at the same time, subjected to an electrical potential between two electrodes. Selective migration of the electrically photosensitive pigment particles takes place, producing a visible image at one or both electrodes.

Appellants have found a class of azo compounds, compounds containing the (–N = N–) linkage, which are useful as electrically photosensitive pigment particles in a photoelectrophoretic imaging process. These azo compounds have a hydroxyl group (–OH) in a position adjacent to the site of the azo linkage. The claims vary in scope with respect to the azo compounds included. Claim 1 is representative:

1. The method of photoelectrophoretic imaging comprising subjecting a layer of a suspension to an electric field and exposing said suspension to an image of activating electro-magnetic radiation until an image is formed, said suspension comprising a plurality of finely divided electrically photosensitive particles of at least one color in an insulating liquid, said particles of one color comprising a photosensitive pigment having the formula:

$$X-N = N-Y$$

wherein:

(A) X and Y are each selected from the group consisting of:

(1) an aromatic group,

(2) a heterocyclic group,

(3) a substituted aromatic group,

(4) a substituted heterocyclic group,

(5) a polynuclear group, and

(6) a substituted polynuclear group, and salts and mixtures thereof; and wherein:

(B) at least one of X and Y has an –OH substitutent [sic] in a position adjacent in respect to the site of the azo linkage, the corresponding hydrazone and tautomeric mixtures thereof.

## The Rejections

The patents relied upon by the board are:

| Tulagin and Carreira | 3,384,565 | May 21, 1968 |
| Clark | 3,384,566 | May 21, 1968 |

Both patents disclose photoelectrophoretic imaging processes. Both patents disclose (but do not claim) the use of certain specific azo compounds having a hydroxyl group in a position adjacent to the position of the azo linkage as pigment particles in a photoelectrophoretic imaging process. Appellants admit that the patents disclose species of compounds meeting the limitations of appellants' claims in a process which also meets the limitations of appellants' claims. The examiner rejected all of the claims under 35 U.S.C. § 102(e) and 35 U.S.C. § 103 in view of the Tulagin et al. or Clark patents.

Appellants submitted parallel declarations under 37 CFR 1.132 by Tulagin and Clark in which each declarant simply stated that he was "not the inventor of the use of compounds having a hydroxyl group in a position ortho to an azo linkage" in a photoelectrophoretic imaging system.

It is appellants' position that these declarations are sufficient to establish that the portions of the Tulagin et al. and Clark patents relied upon by the examiner are appellants' own invention and are not available as references under either 35 U.S.C. § 102(e) or 35 U.S.C. § 103. Appellants rely

upon the opinions of this court in *In re Mathews*, 408 F.2d 1393, 56 CCPA 1033 (1969) and *In re Facius*, 408 F.2d 1396, 56 CCPA 1348 (1969).

The examiner found that the declarations were inadequate to remove the Tulagin et al. and Clark patents as references because they did not establish an effective prior date of invention by appellants of the portions of the references asserted to be appellants' invention. The examiner was of the opinion that appellants could remove the Tulagin et al. and Clark patents as references only by proving that they had invented the relevant subject matter disclosed in the patents prior to the filing dates of the patents.

The Board of Appeals held the test set forth in *Mathews* and *Facius* controlling with respect to the issue of whether the declarations were sufficient to remove the Tulagin et al. and Clark patents as references. The board stated that in order to overcome a patent as a reference through the use of declarations submitted under 37 CFR 1.132, the declarations must establish that appellants invented the relevant subject matter disclosed in the patent, and that the patentees derived their knowledge of the relevant subject matter from appellants. The board found that the declarations failed to establish derivation of the relevant subject matter from appellants, and held the declarations inadequate to remove the patents as references. The board affirmed the rejections of all the claims under 35 U.S.C. § 102(e) and 35 U.S.C. § 103 in view of either the Tulagin et al. or Clark patent.

## OPINION

The sole issue in this appeal is whether the declarations submitted by appellants under 37 CFR 1.132 are sufficient to remove the Tulagin et al. and Clark patents as references in the rejections. The Tulagin et al. and Clark patents are the *evidence* upon which the rejections for lack of novelty, and obviousness, are based. *In re McKellin*, 529 F.2d 1324, 1329, 188 USPQ 428, 432 (Cust. & Pat.App.1976); *In re Hil-*

*mer*, 359 F.2d 859, 879, 53 CCPA 1288, 1313 (1966). If the declarations submitted by appellants are sufficient to remove these patents as references, then the rejections under 35 U.S.C. § 102(e) and 35 U.S.C. § 103 must be reversed for lack of evidence.

The origin and legislative intent of 35 U.S.C. § 102(e) were reviewed by this court in *In re Mathews*, supra. We pointed out in *Mathews* that the origin of 35 U.S.C. § 102(e) is the Supreme Court decision in *Alexander Milburn Co. v. Davis-Bournonville Co.*, 270 U.S. 390, 46 S.Ct. 324, 70 L.Ed. 651 (1926). Therein Mr. Justice Holmes expressed the opinion of the Supreme Court saying: "The fundamental rule we repeat is that the patentee must be the first inventor." *Id.* at 402, 46 S.Ct. at 325, 70 L.Ed. at 654. Consistent with the *Milburn* "rule," appellants concede that the Tulagin et al. and Clark patents are prima facie evidence that appellants are not the first inventors. More particularly, the Tulagin et al. and Clark patents are prima facie evidence of prior invention *by another* of certain species of compounds meeting the limitations of appellants' claims in a process which also meets the limitations of appellants' claims. Appellants admit that these species, if *by another*, anticipate appellants' claims. But appellants assert that the declarations under 37 CFR 1.132 by Tulagin and Clark are sufficient to prove that the species disclosed in the patents are appellants' own work, and therefore the patents do not establish a lack of novelty of their claimed invention. We do not agree.

As we have said, each declarant merely stated that he was "not the inventor of the use of compounds having a hydroxyl group in a position ortho to an azo linkage" in a photoelectrophoretic imaging system. We find these statements ambiguous and inconclusive. The Tulagin et al. and Clark patents do not disclose the general or generic use of compounds having a hydroxyl group in a position ortho to an azo linkage in a photoelectrophoretic imaging system. The patents disclose the use of certain *species* of compounds meeting the limitations of appellants' claims in a photoelectrophoretic

imaging system. We do not infer from these statements that the declarant was not an inventor of the *species* of appellants' invention disclosed in their patents. The declarants could be the inventors of the *species* disclosed in their patents, but at the same time never have conceived of the general or generic use of compounds having a hydroxyl group in a position ortho to an azo linkage in a photoelectrophoretic imaging system. For this reason, inter alia, we do not find the declarations submitted under 37 CFR 1.132 adequate to prove that appellants are the inventors of the species disclosed in the Tulagin et al. and Clark patents. See *In re Borkowski*, 505 F.2d 713, 717, 184 USPQ 29, 32 (Cust. & Pat.App. 1974).

 Because we hold that the declarations submitted under 37 CFR 1.132 fail to establish that appellants invented the relevant subject matter disclosed in the Tulagin et al. and Clark patents, we need not consider derivation of the relevant subject matter. We will however briefly review the board's finding that the declarations also fail to establish derivation of the relevant subject matter from appellants. Appellants concede that the Tulagin et al. and Clark patents are prima facie available as references against their application. The burden of proof is, therefore, on appellants to establish that the patentees derived the relevant subject matter from them. The declarations submitted by Tulagin and Clark do not state who disclosed "the use of compounds having a hydroxyl group in a position ortho to an azo linkage" to them. Cf. paragraph 8 of the Dewey affidavit in *In re Mathews*, 408 F.2d 1393, 1394, 56 CCPA 1033, 1035 (1969). Appellants point to the declarations they submitted as part of their application, 37 CFR 1.65, wherein they state that they *believe* they are the original, *first* and joint inventors of the invention described and claimed in their application. Appellants contend that their declarations *are consistent with* the declarations submitted by Tulagin and Clark, and are sufficient to support a finding that the patentees derived the relevant subject matter from them. We do not find these decla-

rations sufficient to discharge appellants' burden of proof *to establish* that the patentees derived the relevant subject matter from them. Nothing in the declarations of record precludes the possibility that the relevant subject matter was disclosed to the patentees by some third party. As we discussed above, we will not make an inference in favor of a party carrying the burden of proof when, from the facts of record, other reasonable conclusions are possible. See *In re Borkowski*, supra.

The decision of the board is *affirmed*.

*AFFIRMED*

MILLER, Judge (concurring).

I agree that the "sole issue in this appeal is whether the declarations submitted by appellants under 37 CFR 1.132 are sufficient to remove the Tulagin et al. and Clark patents as references in the rejections." I further agree that such declarations are insufficient in that appellants have failed to establish that the patentees derived the relevant subject matter from them. However, it is unnecessary and, as shown below, improper under the precedents of this court to consider an issue not raised below, namely: whether the patentees' declarations establish that they did not originate the relevant subject matter.

The pertinent portion of the Clark declaration, in full context, states:

I am the inventor of the system of photoelectrophoretic imaging claimed in U.S. Patent 3,384,566. The patent discloses the use of azo compounds having a hydroxyl group in a position ortho to an azo linkage.

I am not the inventor of the use of compounds having a hydroxyl group in a position ortho to an azo linkage in this system.

The Tulagin declaration is substantially the same.

The examiner and the board did not challenge the declarations for failing to establish that the declarants did not originate the relevant subject matter. On the contrary, the examiner accepted the declarations on this issue, thus:

Merely because Mr. Clark and Mr. Tulagin have stated that they have not invented specific materials used in certain working examples does not remove 35 U.S.C. 102(e) from rendering the instant invention unpatentable. There is nothing in this portion of the statue [*sic*] which requires the patentees to have invented all aspects of the invention found and disclosed therein. The only way in which the appellants could effectively remove this section of the statue [*sic*] is by establishing an effective date of their invention before the effective date of the prior art; and the 132 affidavit submitted herein does not accomplish this result.

The board affirmed the decision of the examiner solely on the ground that appellants had failed to establish that the patentees derived their knowledge of the relevant subject matter from appellants.

This court has consistently refused to consider new issues on appeal because of the provisions of 35 U.S.C. § 132. See *In re Altenpohl*, 500 F.2d 1151, 183 USPQ 38 (Cust. & Pat.App.1974). If a new rationale or reason advanced by the board requires an opportunity for applicants to respond, *In re Waymouth*, 486 F.2d 1058, 179 USPQ 627 (Cust. & Pat.App.1973), *modified on rehearing*, 489 F.2d 1297, 180 USPQ 453 (Cust. & Pat.App.1974), a new rationale or reason advanced by this court would a fortiori deny appellants procedural due process and amount to an impermissible new ground of rejection. Also, it would deprive appellants of the "hearing" provided by 35 U.S.C. §§ 143 and 144.

Although this court reviews decisions of the board and not merely its opinions, *Hunt v. Treppschuh*, 523 F.2d 1386, 187 USPQ 426 (Cust. & Pat.App.1975), it only reviews those decisions to the extent that the issues involved have been raised before the Patent and Trademark Office. *In re Nygard*, 341 F.2d 924, 52 CCPA 1032 (1965). Indeed, if the adequacy of the declarations to establish that the declarants did not originate the relevant subject matter had been seasonably challenged, appellants might have been able to refute that challenge.